# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| VIVIAN PORTER, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Civil Action No.: 5:14-CV-00949-RDP |
| } | |
| CAROLYN W. COLVIN, } | |
| Acting Commissioner of the Social } | |
| Security Administration, } | |
| } | |
| Defendant. } | |

## MEMORANDUM OF DECISION

Plaintiff Vivian Porter brings this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI") under Title XVI.  *See also* 42 U.S.C. § 1383(c).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be remanded.

**I.      Proceedings Below**

Plaintiff filed her application protectively on January 4, 2011.  (Tr. 13, 33, 119, 248).  In the application, she alleged that her disability began December 11, 2007.[1]  Plaintiff, having previously filed SSI applications in 2004 and 2006, asserted through her attorney that the January 4, 2011 application was for "a wholly different case than the case that was presented" on

---

[1] During the hearing, Plaintiff amended her onset date of disability to January 4, 2011, the protected filing date.  (Tr. 32–33).

the two earlier occasions.[2]  (Tr. 32–33).  Plaintiff's application was initially denied by the Social Security Administration ("SSA").  (Tr. 119–21).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 131).  The request was granted and a hearing was held on October 10, 2012 via video teleconference in Decatur, Alabama before ALJ Troy Patterson. (Tr. 29–59).  At the hearing, Plaintiff and Vocational Expert Anne Darnell ("VE") each testified. (*Id.*).  In his decision dated November 13, 2012, the ALJ determined that Plaintiff has not been under a disability within the meaning of Section 1614(a)(3)(A) of the Act since January 4, 2011. (Tr. 13–22).  On November 23, 2012, Plaintiff requested review by the Appeals Council of the ALJ's decision.  (Tr. 5–8).  On March 21, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, making the ALJ's decision of November 13, 2012 the final decision of the Commissioner, and thus a proper subject of this court's appellate review.  (Tr. 1–3).

**II.     Facts**

Plaintiff, who was forty-four years old at the time of the hearing, is unmarried and has two adult children.  (Tr. 171, 38, 576).  She is a high school graduate who was enrolled in special education classes from the sixth grade forward.  (Tr. 35–36, 576).  The record contains school psychological evaluations from the age of 11.  The most recent evaluation, performed when Plaintiff was age 17, included findings of a mental age of 13.6 years, IQ scores ranging from 73 to 83, and overall level of functioning somewhere between the "educable mentally retarded" and "slow learner" classifications.  (Tr. 251).  Plaintiff's last job involved janitorial work.  She has not worked since September 30, 2001.  (Tr. 87, 191, 201).  Her previous positions included convenience-store cashier, cook, nursing-home janitor, and poultry-processing worker.  (Tr. 87). Plaintiff alleges that she has the following impairments: (1) fibromyalgia, (2) bulging discs in

---

[2] Plaintiff's 2004 and 2006 SSI applications were each denied.  (Tr. 81–93, 94–112, 113–18).

neck and back, (3) asthma, (4) depression, (5) anxiety, (6) arthritis throughout body, and (7) carpal tunnel in both hands. (Tr. 201).

Plaintiff's medical history prior to the onset of her alleged disability begins with complaints of headaches and of shoulder, back, neck, knee, and elbow pain, symptoms treated by Timothy Martin, M.D. from October 2002 to May 2003. (Tr. 281–88). Christopher Gay, D.O. became Plaintiff's treating physician in 2003 and continued in that role through 2008. (Tr. 395–526). In September 2003, Dr. Gay referred Plaintiff to ENT and allergy specialist Jason P. Lockette, M.D., who diagnosed Plaintiff with pansinusitis and headaches. (Tr. 293). In April 2004, Dr. Gay referred Plaintiff to Surender K. Sandella, M.D. for evaluation of chest pain radiating to her left arm, a two-month-old symptom which had worsened in the previous two weeks. (Tr. 298). Dr. Sandella's assessment was: (1) chest pain, (2) fibromyalgia, (3) obesity, (4) gastroesophageal reflux disease, and (5) positive family history of premature coronary artery disease. (*Id.*).

Plaintiff's first mental examination in the record, performed by James E. Crowder, Ph.D. (a psychologist) in July 2004, yielded a diagnosis of: Axis I—"anxiety disorder NOS [not otherwise specified]"; Axis II—"R/O [rule out] borderline personality disorder"; Axis III—fibromyalgia, obesity, lupus; gastroesphageal reflux disease; high cholesterol; and acid reflux disease; Axis IV—moderate stressors "financial, health"; Axis V—a GAF finding of 70. (Tr. 300–02). Cervical-spine x-rays performed by Bernard D. Borosky, M.D. showed "vertebral alignment and disc spaces are intact. There are no intrinsic bony abnormalities. Prevertebral soft tissues are normal." (Tr. 307). Two months later, Jesus Hernandez, M.D. reported to Dr. Gay regarding his evaluation of Plaintiff's joint pain in knees, elbows, and hips. (Tr. 296). He stated that Plaintiff had a normal bone scan, "an unremarkable arthritis profile," and that "[h]er

3

examination is consistent with fibromyalgia syndrome." (*Id.*). A disability exam performed the next month by D.B. Laughlin, M.D. concluded Plaintiff had "[g]eneralized pain with reported history of fibromyalgia," "[i]nsomnia," "[a]nxiety/depression"; and "obesity." (Tr. 303–04).

The record is silent as to Plaintiff's medical history for the next year and a half, but resumed with care at the North Alabama Bone & Joint Clinic from 2006 through 2008 for neck, back, and foot pain, mainly under the care of J. Stephen Howell, D.O. (Tr. 336–56). Treatment received included epidural injections for back and hip pain. (Tr. 339, 340, 342, 343). X-rays obtained in 2007 by Robert Dunn, M.D. showed "[a]bnormal cardiac silhouette worrisome for underlying cardiac abnormality." (Tr. 305). X-rays performed by Dr. Borosky in March 2008 showed "[m]inimal lateral disc bulging without significant neural impingement." (Tr. 346). An initial physical-therapy assessment by Leslie Murphy, PT in July 2008 noted problems of "increased pain, decreased strength, [and] decreased range of motion involving the low back and bilateral hip musculature"; Plaintiff reported onset of low-back pain a year prior. (Tr. 333). The physical therapist saw the outlook as "[g]ood for stated goal[]" of "decreas[ed] back pain." (*Id.*).

The record contains two disability certifications by Dr. Gay. In May 2006, Dr. Gay certified on an Alabama Resident Disabled Fishing form[3] that Plaintiff was "totally disabled as defined by Section 9-11-54, Code of Alabama 1975," specifying "[f]ibromalgia [sic], total body pain, [d]epression, anxiety" as the disabilities.[4] (Tr. 479). Similarly, Dr. Gay certified on an undated application to the Alabama Motor Vehicle Division for disabled parking privileges that Plaintiff "[could not] walk two hundred feet without stopping to rest . . . ." (Tr. 480).

---

[3]The photocopy in the record (Tr. 479) is cut off at the top, so the title of the form is not visible; a handwritten title reads "Disable Fishing" and the form is essentially identical to the "Alabama Resident Disabled Fishing Application" accessible on the Web at http://license.limestonecounty.net/pdf/fishing_disabled.pdf.

[4]The upper portion of the form, where applicant's name, address, and other personal information was to be entered, was left blank; however, it is part of Plaintiff's record. (Tr. 479).

4

Dr. Crowder conducted a second psychological exam of Plaintiff in 2008. (Tr. 300–02, 329–31). His diagnoses were: Axis I—"adjustment disorder with mixed emotional features"; Axis II—"personality disorder NOS with hypochondriacal features"; Axis III—"back pain; bilateral leg pain; left-wrist pain; fibromyalgia"; Axis IV—moderate stressors of "finances, difficulty coping with teenagers"; Axis V—a GAF finding of 65. (Tr. 331). Dr. Crowder's overall assessment was "a slight limitation in her ability to relate to others . . . and slight restriction of daily activities based on her mental condition alone. She has good ability to understand, carry out, and remember simple instructions, and fair to good ability to respond appropriately to supervisors, coworkers, and work pressures . . . ." (*Id.*).

Faye Wilson, M.D. became Plaintiff's treating physician in April 2009, and continued in that role through at least May 2012. (Tr. 621–81). In a "To whom it may concern" letter dated January 18, 2011, Dr. Wilson stated that Plaintiff had "multiple problems with her legs and back" and "bulging disc" [sic] which cause her significant pain"—problems which "have worsened over the years." (Tr. 643). Dr. Wilson also noted Plaintiff's joint arthritis, asthma, gastroesophageal reflux disease, hyperlipidemia, anxiety, and carpal tunnel syndrome. (*Id.*). In a handwritten note on a prescription form dated April 21, 2011, Dr. Wilson noted "severe diffuse joint pain" as well as "bulging disc in space L5-S1," "neck pain," and "bilat[eral] wrist pain," and concluded, "[Plaintiff] is unable to work." (Tr. 642).

Marlin D. Gill, M.D. performed a consultative examination ("CE") on April 4, 2011 in order to determine disability. (Tr. 571–73). Plaintiff indicated to Dr. Gill that she was "unable to work because of low back pain," and also complained of neck, right hip, and generalized body pain; carpal tunnel syndrome; and asthma with daily bouts of coughing and shortness of breath. (Tr. 571–72). Plaintiff reported the symptoms grew worse with standing, walking, or other

5

movement, and that the asthma occurred when doing strenuous housework, walking, or other exertion. (Tr. 572). Plaintiff reported doing light housecleaning, laundry, simple meal preparation, dish washing, driving a car, grocery shopping, bathing, dressing, and other basic personal needs. (*Id.*). She stated she could sit for a maximum of one hour, stand for up to 30 minutes, and walk up to 200 yards. (*Id.*). On the musculoskeletal exam, Dr. Gill observed that Plaintiff had normal gait, "g[ot] on and off the exam table without difficulty[,]" "use[d] her arms well," had "a range of [limb] motion," and demonstrated normal movement and strength overall; however, he added that Plaintiff "gave poor effort during the musculoskeletal portion of the examination." (Tr. 19, 573). Overall, Dr. Gill found Plaintiff had: (1) low back pain, (2) neck pain (with "[r]eported history of 'bulging discs'" noted for both of the latter), (3) right hip pain with "[r]eported history of 'arthritis,'" (4) chronic generalized pain with "[r]eported history of arthritis and fibromyalgia, (5) carpal tunnel syndrome, and (6) asthma. (Tr. 573).

Psychologist William D. McDonald, Ph.D. conducted a CE of Plaintiff on April 11, 2011 with the following diagnoses: Axis I[5]—dysthymic disorder and "pain disorder associated with both psychological factors and a general medical condition"; Axis II—"possible borderline intellectual functioning"; Axis III—"[m]ultiple medical problems, deferred to physician's evaluation"; Axis IV—stressors of unemployment, financial difficulties, educational problems, and limited access to health care; Axis V—a GAF finding of 50. (Tr. 577). Dr. McDonald characterized Plaintiff's prognosis as "[p]oor. [Her] medical problems appear to be chronic and progressive. She also appears to have a life-long history of mental slowness. . . ." (*Id.*).

---

[5]On the "multiaxial" diagnostic framework, *see* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 25–34 (4th ed. 1994), *available at* http://www.terapiacognitiva.eu/dwl/dsm5/DSM-IV.pdf. Axis I is the main diagnosis, Axis II diagnoses personality disorders or intellectual disabilities, Axis III considers potentially relevant medical or neurological conditions, Axis IV evaluates patient's main stressors, and Axis V looks at the Global Assessment of Functioning or "GAF" score from 0 to 100 (highest level of functioning).

Robert Estock, M.D. completed a Psychiatric Review Technique ("PRT") form for Plaintiff on April 15, 2011, in which he noted the presence of three medically-determinable mental impairments not precisely satisfying the diagnostic criteria for each Listing: 12.04 (affective disorders), 12.05 (mental retardation), and 12.06 (anxiety-related disorders). (Tr. 582). Under affective disorders, Dr. Estock diagnosed Plaintiff with "depression/[d]ysthymic [disorder]." (Tr. 585). Under the mental-retardation category, he diagnosed BIF, or borderline intellectual functioning.[6] (Tr. 586). And under anxiety-related disorders, the diagnosis was simply anxiety disorder. (Tr. 587). The medical disposition indicated by Dr. Estock for all three disorders was "RFC [Residual Functional Capacity] [a]ssessment [n]ecessary." (Tr. 582).

Dr. Estock's Mental RFC Assessment, also done on April 15, 2011, found Plaintiff "not significantly limited" with respect to ten abilities, "moderately limited" with respect to ten others, and "markedly limited" for none. (Tr. 604–05). The moderate limitations related to detailed instructions, extended concentration, responding to workplace change, independent goal-setting and planning, completing a normal workday/week without psychologically-based interruptions, and interaction with supervisors, coworkers, and the general public. (*Id.*). In his functional capacity assessment, Dr. Estock stated Plaintiff could learn, remember, and perform simple work routines with more than usual practice; would benefit from a flexible schedule (including 1-2 missed work days per month), casual supervision with frequent task prompts, tactful and supportive feedback, limited public contact, and casual contact with coworkers; needed help with planning; and could deal with changes if infrequent and clearly explained. (Tr. 606). Dr. Estock saw Plaintiff as able to tolerate ordinary work pressures but needing to avoid excessive pressure and workloads, quick decisions, or rapid changes. (*Id.*). He recommended

---

[6]Regarding the "BIF" initialism, *see Harper v. Colvin*, No. 4:13-cv-00808-MHH, 2014 U.S. Dist. LEXIS 101414, at *5 (N.D. Ala. Jul. 24, 2014).

7

regular rest breaks as well as "a slowed pace" but added that Plaintiff "will still be able to maintain a work pace consistent with the mental demands of competitive level work." (*Id.*).

On the same date in April 2011, Richard Whitney, M.D. completed a Physical RFC Assessment of Plaintiff. (Tr. 596–603). Dr. Whitney determined these exertional limitations: (1) lift and/or carry up to 20 pounds occasionally and (2) 10 pounds frequently; (3) stand and/or work, with normal breaks, for about 6 hours total in an 8-hour workday; (4) sit, with normal breaks, for a about 6 hours total; (5) unlimited pushing and/or pulling, within the limits of numbers (1) and (2). (Tr. 597). Dr. Whitney's postural limitations assessment was: (1) climb ramp/stairs occasionally and ladder/scaffolds never; (2) balance frequently; and occasionally (3) stoop, (4) kneel, (5) crouch, and (6) crawl. (Tr. 598). No manipulative, visual, nor communicative limitations were found. (Tr. 599–600). With respect to environmental limitations, Dr. Whitney specified "avoid all exposure" to machinery and other hazards, explaining that "[Plaintiff] should avoid unprotected heights and hazardous machinery"; "avoid concentrated exposure" to extremes of temperature and to fumes, gases, etc.; and "unlimited" exposure to wetness, humidity, noise, and vibration. (Tr. 600). With respect to the symptoms' severity, Dr. Whitney found "[Plaintiff] partially credible." (Tr. 601). He acknowledged medical evidence of record ("MER") to support Plaintiff's allegations of fibromyalgia, bulging discs in neck and back, asthma, arthritis, and bilateral carpal tunnel syndrome; and noted Plaintiff's reported pain on lifting, standing, stair climbing, and walking. (*Id.*). Dr. Whitney found Plaintiff's alleged symptoms reasonable given her medically determinable impairments, but concluded her condition "[was] not supported to [the] degree alleged" and stated Plaintiff could do light housework, shopping, and drive a car. (*Id.*).

Plaintiff submitted records regarding 2012 office visits with Dr. Wilson as additional evidence.  Dr. Wilson's report of the July 2012 office visit indicates that Plaintiff complained she was "not feeling well" and had shortness of breath.  (Tr. 691).  But the record is incomplete – it includes only the first of four pages of the report.  (Tr. 691).

Plaintiff was also seen in September 2012 for sinus problems, an asthma attack, and "discomfort L[eft] side entire arm from shoulder, elbow and wrist" and left hip and back pain. (Tr. 687).  Dr. Wilson's diagnostic assessment was: pain in joint, upper arm (primary); pain in joint site, unspecified; unspecified menopausal/postmenopausal disorder; asthma with bronchitis; other tenosynovitis of hand/wrist; pain in joint, pelvic region and thigh; unspecified disorder of joint, forearm; and unspecified disorder of joint, upper arm.  (Tr. 689).

**III.    ALJ Decision**

Disability under the Act is determined under a five-step test; a finding at any of these steps that the claimant is, or is not, disabled, concludes the analysis.  20 C.F.R. § 404.1520.  In the first step, the ALJ must determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).

In the second step, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe; this means that the impairment significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*

If an alleged impairment is mental, the second step of the analysis also involves what are known as the "paragraph B" criteria.  20 C.F.R. 404 Subpt. P, App. 1, § 12.00.  The criteria used to determine the severity of a mental impairment are: (1) activities of daily living ("ADL's"); (2)

social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). If the "paragraph B" criteria support a severe mental impairment, the analysis moves to step three, where the same criteria are used to determine whether the claimant meets a Listing. In contrast, if a claimant does not meet the "paragraph B" criteria, the analysis turns to "paragraph C." 20 C.F.R. §§ 404.1520(c), 416.920(c). The "paragraph C" criteria involve medically documented history of mental impairment with repeated, extended episodes of decompensation or likelihood of decompensation or inability to function without a highly supportive living arrangement or one's own home. If the "paragraph C" criteria are not met, claimant cannot claim disability based on that impairment. If the "paragraph C" criteria are met, the analysis moves to the third step. 20 C.F.R. §§ 404.1520(c), 416.920(c).

In the third step of the analysis, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the criteria are not met at this step, the ALJ may still find disability under the next two steps of the analysis. However, the ALJ must first determine the claimant's residual functional capacity ("RFC"), meaning the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e).

In the fourth step, the ALJ determines whether the claimant's RFC enables her to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, or if the claimant has no past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the fifth step of the analysis, the burden shifts to the Commissioner to demonstrate the existence of

available employment consistent with the claimant's impairments. The ALJ determines whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g)..

Here, the ALJ determined that Plaintiff was not gainfully employed between January 4, 2011 and November 13, 2012, thus meeting the first step of the analysis. (Tr. 15). At the second step, the ALJ determined that Plaintiff had six severe impairments: degenerative disc disease of the cervical and lumbar spine; asthma; bilateral knee osteoarthritis; borderline intellectual functioning; depression; and anxiety. (Tr. 15). At the third step, the ALJ determined that Plaintiff did not have an impairment, or a combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. 20 C.F.R. 416.920(d), 416.925, and 416.926). (Tr. 15–16). In reaching this determination, the ALJ considered both the "paragraph B" and "paragraph C" criteria. (Tr. 16). With regard to "paragraph B," the ALJ determined that Plaintiff's mental impairments did not cause at least two "marked" limitations or, alternatively, one "marked" limitation together with repeated episodes of decompensation, each of extended duration. (Tr. 16). The ALJ then found, absent repeated and extended episodes of decompensation, or any indication that an increase in mental demands or environmental stressors would trigger decompensation, that the "paragraph C" criteria were not met for Listings 12.02 (organic mental disorders), 12.04 (affective disorders), or 12.06 (anxiety-related disorders). (Tr. 16–17).

Before moving to the fourth step, the ALJ determined Plaintiff has the RFC to perform less than the full range of light work as defined in 20 C.F.R. 416.967(b), with specific abilities and limitations as follows: perform simple, routine, and repetitive tasks; lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand, walk, or sit for 6 hours in an 8-hour

workday; occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; must avoid concentrated exposure to temperature extremes, fumes, odors, dusts, gases, and poor ventilation; must avoid all exposure to unprotected heights and hazardous machinery; only occasional interpersonal contact with coworkers and the public. (Tr. 17–20). At the fourth step, the ALJ determined Plaintiff could not perform any past relevant work. That led to the fifth and final step of the analysis. (Tr. 20). At the fifth step, relying on the testimony of the Vocational Expert, the ALJ determined that available employment consistent with Plaintiff's age, education, work experience, and RFC exists in the relevant work markets. (Tr. 21). The ALJ determined that appropriate occupations, falling within the "unskilled light occupational base," included hand packager, deli worker, and production packer. (Tr. 21, 50).

Based upon this analysis, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Act from January 4, 2011 to November 13, 2012. (Tr. 21).

## IV. Plaintiff's Argument for Reversal

Plaintiff does not contend that the ALJ's decision is not supported by substantial evidence. Rather, she argues that the ALJ failed to apply the proper legal standards in two respects. First, Plaintiff complains that the ALJ failed to properly evaluate the credibility of her testimony of disabling symptoms in accordance with the Eleventh Circuit pain standard. (Pl.'s Br. 3–8). Second, Plaintiff asserts the ALJ failed to properly articulate good cause for according less weight to the opinion of her treating physician. (Pl.'s Br. 9–10).

## V. Standard of Review

The scope of this court's review is limited to two questions. First, does the record reveal substantial evidence to sustain the ALJ's decision? 42 U.S.C. § 405(g); *Walden v. Schweiker*,

672 F.2d 835, 838 (11th Cir. 1982). Second, did the ALJ apply the correct legal standards? *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). In sum, "[the court] review[s] the ALJ's 'factual findings with deference' and his 'legal conclusions with close scrutiny.'" *Riggs v. Soc. Sec. Admin., Comm'r*, 522 F. App'x 509, 510–11 (11th Cir. 2013) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)). While acknowledging the limited scope of judicial review of the ALJ's findings, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

On the first question, 42 U.S.C. § 1383(c) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This is the case even if the evidence preponderates against the findings. *Id.* The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence is more than a scintilla but may be less than a preponderance of evidence; it is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971) (quoting *Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 217 (1938)); *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982) (quoting *N.L.R.B. v. Columbian Enameling and Stamping Co.*, 306 U.S. 292, 300 (1939)).

In contrast to the factual findings, the court submits the legal standards underlying the Commissioner's decision to review *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Even when supported by substantial evidence, a determination may be in error if

"coupled with or derived from faulty legal principles." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)).

## VI.  Discussion

After careful review, the court concludes that Plaintiff's arguments lack merit and that the ALJ's decision is due to be affirmed.

### A.  The ALJ Properly Evaluated the Credibility of Plaintiff's Testimony of Disabling Symptoms Consistent with the Eleventh Circuit Pain Standard.

Plaintiff first argues that the ALJ failed to properly evaluate the credibility of her testimony of disabling symptoms in accordance with the Eleventh Circuit pain standard. (Pl.'s Br. 3–8). Plaintiff cites to the Eleventh Circuit case of *Hale v. Bowen* in support of the proposition that when the Secretary fails to properly articulate good reasons for declining to credit a claimant's subjective pain testimony, or if the reasons articulated are not supported by substantial evidence, then as a matter of law the claimant's testimony is accepted as true. 831 F.2d 1007, 1012 (11th Cir. 1987). (Pl.'s Br. 3–4). This argument is misplaced because the ALJ correctly applied the pain standard and, in doing so, determined that Plaintiff's pain testimony was inconsistent with the record in its entirety.

The Eleventh Circuit pain standard involves two stages of analysis: first, a threshold inquiry and, second, a credibility determination. At the first stage, a claimant must present both (1) evidence of an underlying medical condition and (2) objective medical evidence confirming either (a) the severity of the alleged pain arising from that condition, or (b) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Hand v. Heckler*, 761 F.2d at 1548 (quoting S. Rep. No. 466 at 24). If the claimant successfully passes this threshold requirement, a presumption is created that the claimant is disabled and the burden of proof

effectively shifts to the ALJ to show that the claimant is not disabled. At this point, the ALJ may still discredit a claimant's subjective allegations of disabling pain, but the ALJ "must clearly articulate explicit and adequate reasons for so doing. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *see also Holt*, 921 F.2d at 1223 (11th Cir. 1991), *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995).

Here, the ALJ found that, although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's statements about the intensity, persistence, and limiting effects of her pain were not credible to the extent that they were inconsistent with the RFC assessment conducted by the ALJ. (Tr. 18). The ALJ found that Plaintiff's complaint of severe, disabling neck and back pain were not consistent with multiple radiology reports showing only mild disc bulging. Nor were her statements consistent with treatment records from her treating physician, Dr. Wilson, showing supple neck with full range of motion (including a record from March 2012). (*Id.*). With respect to Plaintiff's allegations of severe, disabling leg and knee pain, the ALJ cited multiple records, including the following: x-rays indicating mild osteoarthritis of the knees; unassisted walking with normal gait on Dr. Gill's musculoskeletal exam in April 2011; and moving all extremities well on Dr. Wilson's exam in March 2012. (*Id.*). Similarly, with regard to her alleged asthma symptoms, the ALJ cited records from Dr. Wilson indicating Plaintiff's asthma was stable in August 2010 and from Dr. Gill showing her respirations were normal and lungs entirely clear in April 2011. (*Id.*). Finally, the ALJ determined that the record did not support the allegations of severe, disabling mental impairments, and pointed to records of appropriate mood and affect in March 2012 and slightly depressed mood in May 2012, both from Dr. Wilson. (Tr. 18–19). Regarding mental impairment, the ALJ also noted Plaintiff's school psychological testing records indicating

15

borderline intellectual functioning (which the ALJ took into account in arriving at Plaintiff's RFC). (Tr. 19).

The court finds that substantial evidence supports the ALJ's decision that Plaintiff's pain testimony was less than fully credible and that the ALJ did not misapply the pain standard. Therefore, Plaintiff's argument on this score does not form a basis for remanding or reversing the ALJ's determination.

> **B.    The ALJ Properly Articulated Good Cause for According Less Weight to the Opinion of Plaintiff's Treating Physician.**

Plaintiff also argues that the ALJ erred in assigning less weight to the opinion of her treating physician, Dr. Wilson, while failing to properly articulate good cause for doing so. (Pl.'s Br. 9–10; Tr. 19–20). In making this argument, Plaintiff relies on two Eleventh Circuit cases — *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (substantial or considerable weight must be given to the opinions of a treating physician), and *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (treating physician's opinion cannot be discounted absent a showing of good cause to the contrary).

Here, the ALJ stated that he gave Dr. Wilson's opinion that Plaintiff is unable to work "some weight but not great weight" for three reasons: determining a claimant's disability is an administrative determination reserved to the Commissioner; Dr. Wilson's opinion was not consistent with her own treatment notes; and Dr. Wilson's opinion was not consistent with that of State Agency consultant Dr. Whitney. (Tr. 19–20).

It is settled law in the Eleventh Circuit that "the opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's

diagnosis."[7] *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). The underlying reasoning is that treating physicians are "likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotation marks omitted). At the same time, while a treating physician's opinion is generally afforded substantial weight, "it is not necessarily dispositive." *Holly v. Chater*, 941 F. Supp. 840, 848 (S.D. Fla. 1996). A treating physician's report "may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards v. Sullivan*, 937 F.2d 580 583 (11th Cir. 1991) (citing *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987)). The opinion of a treating physician may also be rejected if it is "so brief and conclusory that it lacks persuasive weight or when it is unsubstantiated by any clinical or laboratory findings." *Hudson v. Heckler*, 755 F.2d 781, 784 (11th Cir. 1985); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).

With regard to the ALJ's first basis for giving less weight to Dr. Wilson's opinion, the Regulations are crystal clear a determination of a claimant's disability is squarely and exclusively within the province of the Commissioner. 20 C.F.R. § 416.927(d)(3). Dr. Wilson's April 21, 2011 statement that "[Plaintiff] is unable to work" is a medical opinion regarding an administrative determination, and as such it cannot be dispositive. (Tr. 642). Furthermore, both Dr. Wilson's handwritten note of April 2011 and her letter of January 2011 simply set forth diagnoses of impairments; however, the presence of impairments does not amount to a

---

[7]The Social Security Regulations define a treating physician as one who provides a claimant "with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with" the claimant. 20 C.F.R. § 404.1502.

determination of disability. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("the mere existence of . . . impairments does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination in that regard").

The ALJ also noted that Dr. Wilson's opinion was inconsistent with medical evidence of record, citing a treatment note by Dr. Wilson herself dated July 7, 2009[8] in which Plaintiff's musculoskeletal exam was checked as "normal." (Tr. 20, 656). Plaintiff objects that the "ALJ's reliance on that *one* treatment note renders his rationale not supported by substantial evidence." (Pl.'s Mem. 10) (emphasis in original changed to italics). While it is true that the note at issue is only a single medical record and predates Plaintiff's onset date of alleged disability, Plaintiff's claim that the ALJ based his decision on "an isolated review of the record and is contrary to the totality of the medical evidence" is simply undercut by multiple records from different sources. There were other findings by Dr. Wilson that do not support her conclusion regarding Plaintiff's disability. In addition to the July 2011 treatment note, her report on Plaintiff's March 8, 2012 office visit noted "neck supple, full range of motion" and "[m]oves all extremities well" and her report on the May 15, 2012 visit indicated Plaintiff "[m]oves all extremities" although noting her complaints of pain. (Tr. 656, 626, 622). Dr. Gill's April 2011 consultative examination showed Plaintiff had good use and range of motion of her extremities, normal gait, and normal movement and strength overall, and her neck was normal, symmetrical, and supple. (Tr. 572–73). Plaintiff also reported to Dr. Gill that she was able to carry out household cooking and cleaning tasks, driving, shopping, and such personal activities as bathing and dressing. (Tr. 572).

---

[8]Although the ALJ's decision refers to "the medical records dated June 22, 2009," the page citation he provides (Exhibit D28F, Page 36) is to the July 7, 2009 treatment note, with "normal" checked for Plaintiff's musculoskeletal exam. (Tr. 656). In the June 22, 2009 treatment note, neither the "normal" nor "abnormal" options are checked with regard to the musculoskeletal exam. (Tr. 657).

The ALJ stated that his decision to accord "some weight but not great weight" to Dr. Wilson's opinion regarding Plaintiff's alleged disability was also based on the inconsistency of that opinion with the opinion of Dr. Whitney, the State Agency medical consultant who completed a Physical RFC Assessment in April 2011.  (Tr. 19–20, 596–603).  The ALJ stated that he gave "great weight" to Dr. Whitney's opinion because of its consistency with the record as a whole.  (Tr. 19–20).  Generally, the opinion of a physician who did not examine a claimant "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision."  *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)).  Ordinarily, the opinion of  a treating physician is entitled to more weight than that of a non-examining, consultative physician.  *Lewis*, 125 F.3d at 1440.  But here, the ALJ articulated good cause for his decision to rely on Dr. Whitney's opinion.  In fact, he did not rely upon that opinion alone.  The ALJ provided good cause for his decision to accord limited weight to the opinion of Dr. Wilson.  (Tr. 19–20).

Therefore, the ALJ did not fail in his duty to explain his reasoning in giving less weight to the opinion of Plaintiff's treating physician, and this court finds that substantial evidence supported the ALJ's decision in this regard.

**VII.   Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and that with regard to the legal standards that formed the basis for Plaintiff's objections, the ALJ properly decided that Plaintiff's pain testimony was less than fully credible, and properly accounted for his decision to accord less weight to the opinions of Plaintiff's treating physician, Dr. Wilson.  The Commissioner's final decision is therefore due

to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

    **DONE** and **ORDERED** this August 6, 2015.

                                                  **R. DAVID PROCTOR**
                                                  UNITED STATES DISTRICT JUDGE